IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CITY OF FINDLAY,

                Plaintiff,                Case No. 3:05 CV 7443

   -vs-                                       MEMORANDUM OPINION

HOTELS.COM, L.P., et al.,

                Defendant.

KATZ, J.

This is a putative class action brought against a number of online travel companies by the City of Findlay, Ohio, ("the City"), alleging that Defendants underpaid taxes on hotel lodging. (Doc. No. 1-2, Ex. A). The case is before the Court on Defendants' Motion to Dismiss the City's entire complaint under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. (Doc. No. 39-1). Also before the Court is Plaintiff's Motion to Strike Defendants' Memorandum Addressing Plaintiff's Supplemental Authority. (Doc. No. 59-1). That motion is denied. As Defendants point out, this Court has indeed permitted such responses in the past. In any event, the Court herein decides the matters before it without reference to the cited authority, so the point is moot. For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

**I. BACKGROUND**

In its complaint, the City raises five causes of action and requests the Court to certify its claims as a class action on behalf of "all Ohio cities, counties, and townships who have enacted uniform transient taxes and/or an excise tax on lodging by a hotel." (Doc. No. 1-2, Ex. A, ¶ 30). The

City claims each Defendant's failure to remit guest occupancy taxes: (I) Violates the City's transient guest tax ordinance and similar ordinances enacted by the Class; (II) Violates the Ohio Consumer Sales Practices Act ("OCSPA"); (III) Constitutes conversion of funds that belong to the City and the Class; (IV) Warrants imposition of a constructive trust; and (V) Warrants a declaration that Defendants violated the OCSPA. *Id*. ¶¶ 35-53.

The City brings its claims based on these factual allegations:

> Defendants contract with hotels for rooms at negotiated discounted room rates. The hotels indicate what the total tax obligation is on rooms sold in the area where the hotel is located – bed taxes and sales taxes. Defendants then mark up their inventory of rooms and sell the rooms to the general public, who actually occupy the rooms. Defendants charge and collect taxes from occupants based on the marked up room rates, but only remit to Plaintiff Class members the tax amounts based on the lower, negotiated room rates. Each Defendant then retains the difference.

*Id*. ¶ 25. The City alleges Defendants charge their customers an itemized "taxes and services" fee based on the marked-up price, therefore leading the public to believe that "Defendants remit the correct amount of sales tax and bed tax to the appropriate taxing authorities. *Id*. ¶ 28.

## II. ARGUMENTS AND ANALYSIS

In deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). The Court is without authority to dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See generally* 2 James Wm. Moore et al., Moore's Federal Practice §

2

12.34[1] (3d ed. 2006).

**A.     Claim that Defendants Failed to Remit Transient Guest Taxes**:

The City complains that "Defendants have failed to collect and remit to Plaintiff and the Class the [taxes] due and owing to them pursuant to Chapter 195 of the Codified Ordinances of the City of Findlay and similar ordinances." (Doc. No. 1-2, Ex. A, ¶ 37).

Defendants argue "[t]he City's factual allegations fail to establish that [Defendants] are 'vendors' subject to the Findlay occupancy tax's collection and remittance obligations, and that failure requires dismissal of the Complaint in its entirety." (Doc. No. 39-1, p. 3). The City's ordinance states: "'Vendor' means the person who is the owner or operator of the hotel and who furnishes the lodging." Findlay, Ohio, Codified Ordinances § 195.03(d), *available at* http://www.conwaygreene.com/Findlay (click "Start Here"; in pop-up window, click on folder icon next to "Findlay, Ohio"; the cited section appears in "Part One - Administrative Code") (hereinafter "Findlay Ord."). Defendants assert they cannot be "vendors" because they are neither owners nor operators of hotels and because they do not furnish lodging to transient guests. (Doc. No. 39-1, pp. 4-6).

In response, the City argues the purpose and intent of its transient guest tax would be frustrated if Defendants are not considered vendors. (Doc. No. 44, pp. 3-6, 10, 22). The purpose of the tax, it argues, is to generate revenue by levying a three percent excise tax on the amount paid by transient guests for lodging – not three percent of the discounted room rate. *Id*. at 6.

*1.     Defendants Are Not "Vendors" Under the City's Ordinance:*

The Court concludes the City's transient guest tax ordinance, enacted in 1979 and never amended, does not impose a direct tax obligation on Defendants. The ordinance states:

3

> The transient guest tax . . . shall be paid by the transient guest to the *vendor*, and each *vendor* shall collect from the transient guest the full and exact amount of the tax payable on each taxable lodging. The tax required to be collected under this chapter shall be deemed to be held in trust by the *vendor* until paid to the [City Auditor] . . .

Findlay Ord. § 195.06. (emphasis added). Under this ordinance, a "vendor" must be one "who is the owner or operator of [a] hotel . . . ." Findlay Ord. § 195.03(d). The City's complaint does not allege that Defendants are either owners or operators of any hotels, but instead alleges that "Defendants, each of them, are on-line sellers, and/or on-line resellers of hotel rooms to the general public." (Doc. 1-2, Ex. A, ¶ 22). The plain definition of "vendor" in the City's ordinance is too narrow to reach Defendants, who are not alleged to own or operate any hotels.

Because the Court finds a necessary and unambiguous clause defining "vendor" excludes Defendants, there is no reason to construe the language of the City's ordinance in light of its purpose and intent. *See, e.g.*, *Hudson v. Reno*, 130 F.3d 1193, 1199 (6th Cir. 1997) ("[I]f the words of the statute are unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced . . . .") (citing *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)). The first necessary clause defining "vendor" – "owner or operator of [a] hotel" – is sufficiently clear and unambiguous. Because this clause is unambiguous and the City alleges no facts to show Defendants meet this requirement, there is no need to consider whether "vendor's" second necessary clause – "furnishes the lodging" – is ambiguous.

The City argues additional reasons why Defendants should be considered "vendors." It relies on a clause in the definition section of its ordinance: "For the purposes of this chapter, the following definitions shall apply unless *the context clearly indicates or requires a different meaning*." Findlay Ord. § 195.03 (emphasis added); (Doc. No. 44, p. 12). Upon this base, the City builds its argument:

4

"In view of the Ohio Revised Code's definition of vendor and the common law determinations regarding who is or is not a vendor, the City's ordinance is broad enough to include [Defendants'] activities . . . ." (Doc. No. 44, p. 12). For three reasons, the Court cannot conclude that the definition of "vendor" in the City's ordinance requires this application or interpretation.

First, case law rejects the idea that the exception clause in the City's definition section warrants altering the meaning of a specifically-defined term in light of common law determinations. *See Crane Plastics, Inc. v. City of Columbus*, No. 90AP-956, 1991 Ohio App. LEXIS 404, at *11 (Jan. 31, 1991). In *Crane*, a city's tax ordinance contained an exception clause essentially identical the City's. *Id*. The primary issue on appeal was whether the tax statute required references to common law principles in order to construe the meaning of terms at the heart of the dispute. *Id*. at *8-9. The Court answered in the negative, holding that the terms already had "specific definitions as set forth in the [city's] tax . . . code." *Id*. at *11. The court also reasoned, "[h]ad it been intended that traditional common law concepts . . . be utilized in defining the [terms] for tax purposes . . . such a definition could have easily been made a part of the city tax code." *Id*. Similarly, here, "vendor" has a "specific definition" already set forth in the City's ordinance. There is no need now to broaden its meaning through the strained approach urged by the City. In addition, the City initially could have defined "vendor" broadly if it intended to impose a hotel tax obligation on organizations that were not "owners and operators of [a] hotel" – especially when such a definition "could have easily been made a part of the [City's] tax" ordinance, *id*.

Second, because the City, when enacting its ordinance, decided not to adopt the published definition of "vendor" in the Ohio Revised Code (as it did with its "hotel" and "transient guest"

5

definitions), and chose instead to define "vendor" more narrowly, it cannot now demand reliance on the Ohio Revised Code's definition of "vendor" instead of its own.

Finally, even if the exception clause in the City's definition section created an ambiguity regarding whether Defendants are "vendors," the Ohio Supreme Court maintains that when it "find[s] statutes defining subjects of taxation to be ambiguous, [it] resolve[s] the ambiguity in favor of the taxpayer." *Zalud Oldsmobile v. Limbach*, 628 N.E.2d 1382, 1385 (Ohio 1994). The "tax will be construed strictly against the taxing authority." *B.F. Goodrich Co. v. Peck*, 118 N.E.2d 525, 527 (Ohio 1954) (quoting *McNally v. Evatt*, 66 N.E.2d 633, 636 (Ohio 1946)). For the reasons above, Defendants cannot be considered "vendors" under Findlay Ord. Chapter 195.

### 2. *Defendants Have a Duty to Remit Collected Taxes*

Although Defendants have no direct taxable duty under the City's ordinance, the Court finds the City has presented a viable legal theory under which it could be granted relief. The City relies on *Barker Furnace Co. v. Lindley*, No. 6813, 1981 Ohio App. LEXIS 13603, at \*6-7 (June 2, 1981). (Doc. No. 44, p. 7). *Barker* holds that a "party's error in making [an] improper [tax] collection is no justification for avoiding assessment for non-remission, a duty which exists concommitant [sic] to the authority under which the collection is made." *Barker*, 1981 Ohio App. LEXIS 13603, at \*10.

In *Barker*, the taxpayer was a contractor who purchased equipment that it used in its construction contracts and also sold at retail without installation. *Id*. at 2. The taxpayer charged sales tax on both types of transactions and the sales tax charges were labeled as such on the construction contracts. *Id*. at \*2, 9. However, the taxpayer calculated taxes on its construction contract prices in such a way that it received from its customers an amount of sales tax in excess of the amount which it paid to the State. *Id*. at \*3. The Tax Commissioner assessed the taxpayer for non-remission of

6

these funds. *Id.* The taxpayer argued it should not have to remit the funds because its contract transactions were nontaxable under the applicable tax statute. *Id.* at *7-8. The tax commissioner conceded the contract transactions were nontaxable, but argued that "in such a situation[,] the party charging and collecting the tax (which has no legal existence) under the apparent authority of state law, may not thereafter keep the amount collected for the reason that the collection was erroneous." *Id.* at *8. The *Barker* court agreed, justifying its holding by the "express legislative policy" of Ohio Rev. Code § 5739.01(H). *Id.* at *7-8. That section, now § 5739.02(E), states in pertinent part:

> The tax collected by the vendor from the consumer under this chapter is not part of the price, but is a tax collection for the benefit of the state, and of counties levying an additional sales tax . . . and of transit authorities . . . . [N]o *person* other than the state or such a county or transit authority shall derive any benefit from the collection or payment of the tax levied . . . .

Ohio Rev. Code § 5739.02(E) (internal citations omitted) (emphasis added). The Court finds this legislative policy warrants applying *Barker*'s holding to the City's claims.

The Court, for two reasons, does not conclude *Barker*'s holding requires the taxpayer involved to be a "vendor." First, the Ohio Supreme Court, shortly after *Barker*, rejected the argument that a duty to remit erroneously-collected taxes applies only to "vendors:"

> While R. C. 5739.01(H) refers to vendors, we find these references acknowledge that vendors are charged with the duty to collect sales tax . . . . Of greater importance is the General Assembly's use of the word "person," when describing who shall not "derive any benefit from the collection or payment of such tax." The definition of person, pursuant to R. C. 5739.01(A), includes appellant.

*Geiler Co. v. Lindley*, 423 N.E.2d 134, 136 (Ohio 1981) (footnote omitted). Here, Defendants also meet the definition of person in Ohio Rev. Code § 5739.01(A), since they are "partnerships," "corporations," or "combinations of individuals of any form." Ohio Rev. Code § 5739.01(A). Second, *Barker* itself states the taxpayer there was not a "vendor." *Barker*, 1981 Ohio App. LEXIS

7

13603, at *8-9 ("The taxable event in the instant case was installation of the equipment for which Barker is classified as a consumer . . . ."); *id.* at *6 ("[T]he contractor, rather than being a vendor, is the consumer and is directly responsible for the [use, as opposed to sales,] tax and its remittance . . . .").

Here, the City alleges Defendants are collecting the correct tax amount required by the City's ordinance and denominating it as a sales and/or bed tax. *Barker* holds that even when a taxing statute fixes no liability, the collector is responsible for its payment to the proper taxing authority so long as the collection *purports* to be a collection of a tax. *Barker*, 1981 Ohio App. LEXIS 13603, at *8-9. Because Defendants here "undertook to charge and collect a sales tax on . . . transactions with [their] customers, [they] . . . assume[d] the responsibility for such collections and the duty to remit them to the [City]. *Id.* at *10. The City's allegations, if true, impose a duty on Defendants to remit the transient guest taxes they collected.

The City's complaint has overcome Defendants' motion to dismiss by presenting "allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005), *cert. denied*, 2006 U.S. LEXIS 3658 (May 1, 2006); *see also* 2 James Wm. Moore, et al., Moore's Federal Practice § 12.34[1][b] ("[C]ourts will not dismiss for failure to state a claim merely because the complaint . . . miscategorizes legal theories."). Defendants' Motion to Dismiss the transient guest tax claim in Count I of the City's complaint is denied.

**B.    Claim that Defendants Violated the Ohio Consumer Sales Practices Act**:

The City complains that "Defendants engaged in deceptive, unlawful, unfair, and fraudulent business acts and practices," in violation of the OCSPA, Ohio Rev. Code Chapter 1345, by failing to

8

remit taxes due and owing to the City and the Class. (Doc. No. 1-2, Ex. A, ¶ 39). The City, individually and on behalf of the Class, seeks a declaratory judgment that Defendants' business practices violated Chapter 1345 and that the City and Class are entitled to restitution and relief. *Id*. ¶ 41.

Defendants argue these claims should be dismissed because the City failed to plead the necessary elements of its individual and class-action OCSPA claims. (Doc. No. 39-1, pp. 8-14).

The OCSPA prohibits suppliers from committing unfair, deceptive, and unconscionable acts or practices in connection with a consumer transaction. Ohio Rev. Code §§ 1345.02-.03. A consumer transaction "means a sale, lease, assignment, award by chance, or other transfer or an item of goods, a service, a franchise, or an intangible, to an *individual* for purposes that are primarily personal, family, or household . . . ." *Id.* § 1345.01(A) (emphasis added). A consumer is a "person who engages in a consumer transaction with a supplier." *Id*. § 1345.01(D).

The OCSPA permits individual and class action claims. *See id*. § 1345.09. When a violation of an act prohibited by §§ 1345.02 or 1345.03 occurs, "the consumer may, in an individual action, rescind the transaction or recover his damages." *Id*. § 1345.09(A). Regarding OCSPA class actions, the Ohio Supreme Court recently stated that Ohio Rev. Code § 1345.09(B):

> [P]rovides that a consumer may qualify for class action status *only when* a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable. The prior notice may be in the form of (1) a rule adopted by the Attorney General under R.C. 1345.05(B)(2) or (2) court decision made available for public inspection by the Attorney General under R.C. 1345.05(A)(3).

*Marrone v. Philip Morris*, No. 2004-1824, 2006 Ohio LEXIS 1859, at *7 (June 14, 2006) (emphasis added).

The City makes several concessions in its response to Defendants' Motion to Dismiss. First,

9

the City concedes that it is not an "individual." (Doc. No. 44, p. 17) ("[T]he City of Findlay is not alleging that it is an individual. It is a government, which qualifies as a 'person' under the Act."). In addition, the City concedes that Defendants' failure "to remit taxes is not a transfer of goods or services for 'personal, family, or household' purposes." *Id*. at 19. Furthermore, the City concedes the consumer transaction "at the heart of this matter" is the purchase of the hotel rooms by transient guests from Defendants. *Id*. at 19, 22.

The City argues it has standing to bring its OCSPA claims for three reasons. First, it argues § 1345.09 does not limit who can bring a claim to "individuals," but "states simply that a 'consumer has a cause of action and is entitled to relief . . . .'" (Doc. No. 44, p. 17). The City's concession that it is a "person" but not an "individual" prevents its statutory classification as a "consumer" because the OCSPA "requires that a consumer be an 'individual,'" and "[t]he term 'individual' has been interpreted to mean a natural person." *Watkins & Son Pet Supplies v. Iams Co.*, 107 F. Supp. 2d 883, 893 (S.D. Ohio 1999) (citing *Toledo Metro Fed. Credit Union v. Ted Papenhagen Oldsmobile, Inc.*, 381 N.E.2d 1337, 1339 (Ohio Ct. App. 1978)); *see also Ferron & Assocs., LPA v. U.S. Four, Inc.*, No. 05AP-659, 2005 Ohio App. LEXIS 6280, at *11-13 (Dec. 29, 2005) (collecting cases). Because the City is not a natural person, it may not assert an OSCPA claim.

The City next argues that although the consumer transactions in this case were between the transient guests and the Defendants, the City, "as a beneficiary of the consumer transaction," (Doc. No. 44, p. 22), "was engaged in this consumer transaction, in that the remittance of the tax dollars collected from the hotel occupants occurred after the transaction between the [Defendants] and the occupants," *id*. at 17. Although "[c]ourts have interpreted the OCSPA to apply to the collection of debts associated with consumer transactions," *Delawder v. Platinum Fin. Servs. Corp.*, No. C-1-04-

10

680, 2005 U.S. Dist. LEXIS 40139, at *26 (S.D. Ohio Mar. 1, 2005), *appeal dismissed*, 2006 U.S. App. LEXIS 15478 (6th Cir. June 19, 2006), the City's argument that collecting taxes involves it in the consumer transaction here is irrelevant because the Court concludes an OCSPA claim must be brought by a natural person.

Finally, the City argues that even if it is not a consumer, courts in other jurisdictions "have held that non-consumers may bring suit under consumer protection statutes." (Doc. No. 44, p. 18). The City relies solely on *John Labatt Ltd. v. Molson Breweries*, 853 F. Supp. 965, 970 (E.D. Mich. 1994), which holds that non-consumers who have a significant stake in the events have a right of action under the Michigan Consumer Protection Act ("MCPA"). However, *Labatt*'s holding is not without criticism. *See Watkins*, 107 F. Supp. 2d at 892-93. Moreover, the "issue in *Labatt* was limited to whether a business competitor had standing to sue under the MCPA." *Robertson v. State Fire & Cas. Co.*, 890 F. Supp. 671, 678 (E.D. Mich. 1995). *Labatt* "has no obvious application" here, *id.*, since the City is bringing suit as a government entity and not as a business competitor.

In addition, the City cannot bring an OCSPA class action claim because the two prerequisites set forth in Ohio Rev. Code § 1345.09(B) have not been alleged. *See Johnson v. Microsoft Corp.*, 802 N.E.2d 712, 720 (Ohio Ct. App. 2003), *aff'd on other grounds*, 834 N.E.2d 791 (Ohio 2005). Defendants' Motion to Dismiss the City's OCSPA claims is granted. Accordingly, Defendants' Motion to Dismiss the City's claim seeking a declaratory judgment that Defendants violated the OSCPA is also granted.

**C.** **Claim seeking Imposition of Constructive Trust:**

The City claims Defendants are holding collected tax funds as "constructive trustee for the benefit of the Plaintiff and the Class," and requests this Court to order Defendants to give it and the

11

Class possession of these monies. (Doc. No. 1-2, Ex. A, ¶ 49). It argues alternatively that the doctrine of resulting trusts is applicable here. (Doc. No. 44, p. 10).

The City alleges Defendants are "unjustly enriched" by retaining a "significant portion" of the tax funds collected to which Defendants are not entitled. *Id*. at 9. It further alleges that the guests did not intend for the Defendants to reap any benefit from the tax monies collected and argues these guests are legally obligated to pay the tax as it is "deemed a debt owed by the transient guest to the City [under] Findlay Ord. § 195.14." *Id*. at 10.

*1.  Constructive Trust:*

The Ohio Supreme Court has defined a constructive trust as:

[A] trust by operation of law which arises contrary to intention and in invitum, against one who . . . by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Ferguson v. Owens*, 459 N.E.2d 1293, 1295 (Ohio 1984) (per curiam) (quoting 76 Am. Jur. 2d *Trusts* § 221, (1975) (initial alteration in *Ferguson*). A constructive trust may be imposed even though property "was acquired without fraud," *id*., or acquired "in good faith," *In re Guardianship of Bucholtz*, 97CA0079, 1998 Ohio App. LEXIS 1908, at *4 (Apr. 24, 1998).

A constructive trust subjects the person holding legal title "to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Gabel v. Richley*, 655 N.E.2d 773, 778 (Ohio Ct. App. 1995) (internal quotation omitted). "Unjust enrichment occurs when one person has and retains money or benefits which in justice and equity *belong to another.*" *Bucholtz*, 1998 Ohio App. LEXIS 1908, at *4 (emphasis added). At least one Ohio court has expressly held that a constructive trust claim also requires the plaintiff to demonstrate

12

that a Defendant "possess[es] funds which *rightfully belong* to [the plaintiff]." *Union Sav. Bank v. White Family Cos.*, No. 21137, 2006 Ohio App. LEXIS 2467, at *15-16 (May 19, 2006) (emphasis added).

The Court finds the City has alleged facts to survive dismissal of its constructive trust claim. Here, assuming the City's allegations are true, equity requires imposition of a constructive trust to prevent unjust enrichment. The City has alleged facts under a viable legal theory to show that it and the Class are rightfully entitled to the transient guest taxes collected and retained by Defendants and thus Defendants cannot hold these funds in equity and good conscience.

2. *Resulting Trust:*

The City's resulting trust theory, however, is in error. A resulting trust is "one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title." *First Nat'l Bank of Cincinnati v. Tenney*, 138 N.E.2d 15, 17 (Ohio 1956) (internal quotation omitted).

Any resulting trust imposed here would be created in favor of the purchasing hotel guests; not in favor of the City and the Class. "A resulting trust arises *in favor of one who transfers property* under circumstances that raise a rebuttable inference that the *transferor* intended to transfer to another bare legal title without giving the transferee a beneficial interest in the property . . . ." *Bell v. Straight, Inc.*, 707 F. Supp. 325, 329 (S.D. Ohio 1989) (emphasis added) (citing *Croston v. Croston*, 247 N.E.2d 765, 769 (Ohio Ct. App. 1969)). Here, it is the hotel guest, not the City, who "transfers" the tax payment retained by Defendants.

The Court denies Defendants' Motion to Dismiss the City's constructive trust claim.

**D.     Conversion Claim**:

In its conversion claim, the City alleges that "Plaintiff and the Class, were, and are, the sole rightful owners of the taxes due and owing to them under Ohio Rev. Code §§ 5739.08 and 5739.09;" that at all times alleged these monies "were in the possession and under the control of Defendants;" and that "Defendants have taken these monies for their own use and benefit, thereby permanently depriving Plaintiff and the Class of the use and benefit thereof." (Doc. No. 1-2, Ex. A, ¶¶ 43-45). As a result, the City and Class allege suffering and seek punitive damages and "damage in an amount to be determined according to proof at the time of trial." *Id*. ¶ 46.

"Conversion is the wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Young v. City of Sandusky*, No. 3:03CV7490, 2005 U.S. Dist. LEXIS 12258, at *27 (N.D. Ohio June 23, 2005) (internal citation omitted); *see also Balt. & Ohio R.R. v. O'Donnell*, 32 N.E. 476, 478 (Ohio 1892). To establish a claim of conversion, a plaintiff "must establish three elements: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Young*, 2005 U.S. Dist. LEXIS 12258, at *28. A plaintiff may claim conversion of money where the defendant is obligated to pay specifically identifiable funds to the plaintiff. *See Davis v. Flexman*, 109 F. Supp. 2d 776, 808 and n.30 (S.D. Ohio 1999) (plaintiff could recover under a conversion theory monies defendant received for her work but failed to pay to her per their agreement); *Wiltberger v. Davis*, 673 N.E.2d 628, 634 (Ohio Ct. App. 1996) (noting the trial court had explained that "an action for the conversion of money is not recognized 'except where the money is

14

specifically identifiable,'" and calling a conversion claim based on the failure to pay specific commissions owed to the plaintiff not "wholly unwarranted" given the state of existing authority).

In Ohio, "[a] demand and refusal in a conversion action are usually required to prove the conversion of property otherwise *lawfully* held." *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.*, 493 N.E.2d 289, 292 (Ohio Ct. App. 1985) (emphasis added). "'[T]he sole object of a demand [in a conversion action is] to turn an otherwise lawful possession into an unlawful one, by reason of a refusal to comply with it, and thus to supply evidence of a conversion.'" *Fid. & Deposit Co. v. Farmers & Citizens Bank*, 52 N.E.2d 549, 550 (Ohio Ct. App. 1943) (quoting *Pease v. Smith*, 61 N.Y. 477, 481 (N.Y. 1875)). Here, the City in its conversion claim is not required to allege demand and refusal because Defendants do not lawfully hold the tax funds they have collected.

The City – in asserting its right to possession of tax funds collected by Defendants, Defendants' continual retention of these funds, and damages – has alleged all essential elements of a conversion claim. Defendants' Motion to Dismiss the City's conversion claim is denied.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 39) is granted as to Count II (OCSPA claims) and Count V (declaration on OCSPA claims) of the City's complaint, and is denied as to Count I (violation of transient guest tax ordinances), Count III (conversion), and Count IV (imposition of a constructive trust). The Plaintiff's Motion to Strike (Doc. No. 59) is denied.

IT IS SO ORDERED.

    S/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE